PETERSON et al. v. NOOTS et al.

NOOTS v. PETERSON et al.

(Circuit Court of Appeals, Ninth Circuit. February 10, 1919.)

No. 3213.

1. SHIPPING ⬅25—BILL OF SALE—CONTRACT FOR BUILDING SHIP.

Where the contract for the building of a ship provided that the vessel and all materials therein should be the property of the purchaser at all stages of construction, a bill of sale executed to him by the builders after completion was without consideration or effect.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. Shipping ⟨⟩26—Contract for Building Ship—Delay in Delivery—"Force Majeure."

Delay in delivery of a ship by the builder, caused by the breaking of the ways when she was launched, *held* not due to "force majeure," as defined and excepted by the contract.

3. Shipping ⟨⟩26—Construction of Ship—Contract for Building Ship "And Delivery."

In a contract for building of a ship, providing for liquidated damages for delay in delivery "unless by causes within the terms of this contract and delivery of the engines by" the builders thereof, the words "and delivery" cannot be construed to mean "or nondelivery," so as to bring that cause within the exception.

In Error and Cross-Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action at law by G. Noots against Andrew Peterson, the Aberdeen Shipbuilding Company, and the Seattle National Bank. From the judgment, defendants Peterson and the Aberdeen Shipbuilding Company bring error, and plaintiff assigns cross-error. Affirmed.

The plaintiffs in error were defendants to the action, which was brought upon a contract entered into November 25, 1916, between Peterson, who was a shipbuilder of Aberdeen, state of Washington, by which he agreed to build a twin-screw schooner for the plaintiff Noots, according to certain plans and specifications and subject to certain specified conditions. In the contract Peterson was designated as builder, and Noots as purchaser. It provided that the builder should procure a surety bond in the sum of $18,500, conditioned for the faithful performance of all of the terms and obligations of the contract, and, being unable to give the bond, it was agreed between the parties that $10,800 should be retained out of the initial payment due the builder, and $7,620 should be retained out of the second payment due him under the contract, which moneys should be and were deposited with the Seattle National Bank in lieu of the bond, and an escrow memorandum entered into reciting that the bank should hold the same as security to the purchaser for the faithful performance of the contract on the part of the builder, and that "ninety days after the completion of said vessel. which completion shall be evidenced by and only by the certificate of the Bureau Veritas, the said bank shall pay said sum of $18,500 to said Andrew Peterson, unless before that time the purchaser shall have commenced in the proper court an action asserting a claim for damages for some breach of said construction contract by the builder, and given notice to the bank of such suit, in which event the bank shall still retain said sum to be disposed of in accordance with the outcome of such suit." That money is still on deposit with the bank, for which reason it was made a party to the action.

By the terms of the contract the vessel was to be delivered July 15, 1917, and in the event of the failure to deliver it on that day, it was provided that the builder should pay to the purchaser $100 a day as liquidated damages, unless the delay was excused under the terms of the contract. The vessel was not delivered to the purchaser until January 11, 1918. Prior to the making of the contract, Noots had entered into a contract with J. H. Hansen Company for the purchase of the engines for the vessel, to be delivered by that company June 7, 1917, and had paid on account thereof to the Hansen Company $9,120, which contract Noots, at the time of entering into the contract with Peterson on November 25, 1916, had assigned to Peterson, who agreed to make the balance of the payments to the Hansen Company for the engines. Subsequently Peterson assigned the construction contract to the defendant Aberdeen Shipbuilding Company, a corporation organized by him, which corporation finished and delivered the vessel. The action was brought against both Peterson and the shipbuilding company to recover liquidated

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

damages at the rate of $100 per day for the 179 days' delay in the delivery of the ship and against the Seattle National Bank, the escrow holder, against which the plaintiff asked a direction that it pay the amount held by it in escrow.

The bank filed an answer, admitting its possession of the money under the escrow agreement, and it was agreed between the litigant parties that the court should fix in its judgment the liability of the bank between them.

The answer of the defendants Peterson and Aberdeen Shipbuilding Company admitted the execution of the construction contract, as well as the date of the delivery of the vessel, but denied that the delay in such delivery was without excuse, or that it was due to their negligence. In addition they set up three affirmative defenses, the first of which alleged that, some time prior to the delivery of the vessel, the plaintiff notified the defendant shipbuilding company that he would not accept delivery of the vessel and pay the last installment of its purchase price unless, among other things, it executed to the plaintiff a bill of sale of the vessel; that on the 11th day of January, 1918, the shipbuilding company delivered to the plaintiff a bill of sale of it in consideration of its acceptance by the plaintiff in complete fulfillment and discharge of all the terms and conditions of the construction contract, and that the plaintiff on that day accepted both the bill of sale and the schooner itself.

The second affirmative defense alleged that the engines were not delivered by the Hansen Company as provided by its contract with the plaintiff until August 18, 1917, by reason of which the defendants could not deliver the vessel to the plaintiff until the expiration of a reasonable time thereafter; that on July 12, 1917, there was a strike and industrial disturbance in the yard of the defendant shipbuilding company, of which the plaintiff was duly notified, and that such disturbance delayed the delivery of the vessel for a period of 20 days. It further alleged that on August 1, 1917, a second strike and industrial disturbance occurred, of which the plaintiff was duly notified, and that by reason of that disturbance delivery of the vessel was delayed for a period of 60 days.

The third affirmative defense alleged that the defendants attempted to launch the vessel September 20, 1917, in the presence of the duly authorized agent of the plaintiff, but that the launching ways broke, without fault on the part of the defendants, and that by reason of such accident the vessel was not actually launched until September 28, 1917, and that due to that accident the vessel was damaged and partially destroyed, within the meaning and intent of paragraph 4 of the construction contract, and that it was necessary to take the vessel to Portland, Or., for the purpose of drydocking and repairing it; that the vessel was insured against damage by launching or accident during the process of construction, as provided in said paragraph 4 of the construction contract; that after such launching accident the defendants diligently prosecuted the reconstruction and repairing of the vessel: and that the delay in its delivery was unavoidable and without fault on the part of the defendants.

After trial a verdict was returned in favor of the plaintiff for the sum of $7,100, upon which judgment was entered in that sum, with costs, and by which the defendant bank was directed to pay that amount to the plaintiff and the remainder of the escrow money to the defendant Aberdeen Shipbuilding Company.

The case is brought here upon writ of error.

James Kiefer, of Seattle, Wash., for plaintiff.
Bridges & Bruener, of Aberdeen, Wash., for defendants.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The court below by its rulings eliminated from the case the bill of sale of the vessel, its recitals and effect—denying requested instructions of

the plaintiffs in error in relation thereto. The court also directed the jury to disregard everything regarding the launching accident and to confine their consideration to the facts regarding the delay in the delivery of the vessel and the causes thereof.

The action of the court respecting the bill of sale and the launching accident were excepted to by the defendants and have been duly assigned as error. In so far as concerns the former, the argument of the plaintiffs in error is that the construction contract did not require of them such an instrument, but that the plaintiff, having demanded and accepted it, is bound by all of the terms and conditions thereof. The record shows that the bill of sale was signed and acknowledged on behalf of the shipbuilding company January 10, 1918, and that on the same day the plaintiff, through his duly appointed agent, delivered to the defendants this communication:

"Seattle, Washington, Jan. 10, 1918.

"To Andrew Peterson and to Aberdeen Shipbuilding Company, Successor to Andrew Peterson, Aberdeen, Wash.—Gentlemen:

"The undersigned, purchaser under that certain contract made November 25, 1916, between Andrew Peterson and the undersigned purchaser for the construction of one twin-screw wooden auxiliary schooner, hereby tenders to you payment of the sum of $37,000, being the final balance due on said vessel, and offers to take possession of her; and you are hereby notified that by so doing the undersigned does not waive, but expressly insists upon, his right to claim the liquidated damages of $100 per day in accordance with paragraph 13 of said contract, and the undersigned hereby gives you notice that he claims and demands the sum of $20,859.80 for liquidated damages for delay of 179 days in the delivery of said vessel beyond the 15th day of July, 1917, in accordance with said paragraph 13 of said contract; and this payment is made without waiver of or prejudice to said claim, and which payment is made under and in pursuance of paragraph 12 of said contract.

"G. Noots,

"By Ch. Jolivet, His Agent."

The bill of sale which accompanied the delivery of the vessel is as follows:

"Know all men by these presents, that Aberdeen Shipbuilding Company, a corporation of Aberdeen, Washington, hereinafter called the grantor, for and in consideration of the sum of one ($1.00) dollar, lawful money of the United States of America, the receipt whereof is hereby acknowledged, and in consideration of the acceptance of this instrument by G. Noots, represented by Ch. Jolivet, hereinafter called the grantee, in complete fulfillment, satisfaction, and discharge of all the terms and conditions, on the part of the builder to be performed, of that certain contract made on the 25th day of November, A. D. 1916, by and between Andrew Peterson, shipbuilder, of Aberdeen, Washington, and G. Noots, represented by Chas. Jolivet, for the construction of one twin-screw wooden auxiliary schooner, which contract was by the said Andrew Peterson duly assigned to Aberdeen Shipbuilding Company, a corporation, does herewith grant, bargain, sell, transfer, and set over unto the said grantee all its right, title, claim, and interest in and to that certain one twin-screw wooden auxiliary schooner designated as 'Suzanne,' now lying in the waters of Grays Harbor, in the county of Grays Harbor, state of Washington, together with all tackle, apparel, furniture, and equipment of said vessel. The said grantor does hereby covenant to and with the said grantee that said vessel is free from all liens and incumbrances, and that all bills for labor and materials which have gone into and have been made a part of said vessel have been duly and fully paid. The said grantee by the acceptance of this instrument does take possession of said vessel in accordance with the purport of this instrument."

The contention of the plaintiffs in error is that the recitation in the bill of sale, that it was accepted "in complete fulfillment, satisfaction, and discharge of all the terms and conditions" of the construction contract to be performed by the builder, operated to defeat any recovery by the purchaser for delay in the delivery of the vessel. We think a sufficient answer to the contention is that by the seventh clause of the construction contract it was expressly agreed:

"That said schooner shall at all times be the property of the purchaser in all stages of construction and that all material purchased and delivered in the yard for it or appropriated to the construction of it shall become the property of the purchaser by such delivery and appropriation, subject to a lien by the builder for any unpaid installment of the purchase price."

In view of those provisions of the contract, the payment by the purchaser of the balance due from him perfected his title to the vessel, and the bill of sale was therefore without effect, as well as without consideration.

[2] We are also of the opinion that the court below was right in its holding that the breaking of the launching ways was not one of the acts the parties to the construction contract provided should operate as an extension of the time fixed for the delivery of the vessel. That provision is as follows:

"If prompt delivery of said schooner is prevented by 'force majeure,' then the time for delivery of said schooner shall be extended correspondingly. The term 'force majeure' shall mean acts of God, strikes, lockouts (reasonably justified) or other industrial disturbances, war, blockades, insurrections, epidemics, landslides, lightning, earthquakes, arrest and restraints of rulers and people, explosions, fires, floods, and other like causes. No delay in the delivery of the vessel will be justified under the term 'force majeure,' excepting so far as the builder shall have notified the purchaser in writing at the beginning of such delay and the particulars thereof and at the termination thereof stating the duration thereof."

Waiving the question as to whether the actual knowledge of the agent of the purchaser should be held to take the place of the written notice the contract declared should be given by the builder to the purchaser, we think the launching accident cannot be properly regarded as coming within the words "other like causes," added to the specifically described acts declared to operate as an extension of the prescribed time of delivery, for the reason that the parties specifically provided in the contract for insurance against any and all damage arising from the launching of the vessel, and specifically provided, in effect, that the builder should bear all charges for such insurance.

It is further contended by the appellants that the delay in the completion and delivery of the vessel was due to a delay in the delivery of the engines therefor, and that for the latter delay Noots was responsible. We do not so understand the contract of the parties. The construction contract in its fourteenth subdivision expressly recited the fact that Noots, therein designated as "purchaser," had made a contract with the builders of the Skandia engine for the engines required for the schooner contracted for, and had paid thereon $9,-120, which contract he assigned to Peterson, designated in the con-

struction contract as "builder," the latter assuming the payment of the balance due for the engines according to the terms of the contract between Noots and the Hansen Company, and which sum of $9,120 was allowed as a part of the $20,000 payment required to be made on the signing of the construction contract.

We find in the latter contract not only no guaranty by Noots of the delivery by the Hansen Company of the engines within the time specified in the contract between him and that company, but no provision even tending to show that any of the parties had any such understanding. On the contrary, subdivision 9 of the construction contract expressly declares that—

"The builder shall take from the manufacturer of the Skandia engines the usual guaranty as to material, workmanship and fuel consumption, which shall run in favor of the builder and his assigns. Such guaranty shall be by the builder assigned and delivered to the purchaser."

The clause just quoted is quite inconsistent with the theory that Noots guaranteed the delivery of the engines at any specified time, or at all; indeed, any more than that he guaranteed the material of which they were constructed, or their workmanship or fuel consumption.

[3] The further contention on the part of the plaintiffs in error that they were not made liable for any damage growing out of the nondelivery of the engines within the time specified for such delivery, based upon subdivision 13 of the construction contract, is, we think, also untenable. That provision is as follows:

"13. It is agreed between the parties hereto that if said schooner shall not be ready for delivery on July 15, 1917, and shall not be delivered on that date, unless by causes within the terms of this contract and delivery of the engines by the J. H. Hansen Company on the 7th of June, 1917, as defined by their contract, that the builder shall pay and will pay to the purchaser the sum of one hundred ($100.00) dollars per day for each and every day that such delivery shall be delayed beyond July 15, 1917, or beyond such postponed date of delivery as may be fixed by and within the terms of this contract, as liquidated damages for the loss of the use of this said schooner, and if the said builder shall deliver the said schooner before the 15th day of July, 1917, the purchaser will pay to the builder the sum of one hundred ($100.00) dollars per day for each and every day elapsing between the date of delivery and the said July 15, 1917."

It is insisted that the true and only meaning of the foregoing paragraph is that, if the defendants should fail to deliver the vessel by July 15, 1917, they would pay the purchaser $100 for each and every day that such delivery should be delayed beyond that specified day, unless such failure was the result of some act falling within the terms of the construction contract, "or by failure to receive delivery of the engines on June 7, 1917." Neither the clause last quoted nor anything of like effect is found in the construction contract, and it need hardly be said that courts have no authority to make contracts for parties. The agreement of these parties was that the delivery of the vessel July 15, 1917, might be excused and the time extended "by causes within the terms of this contract and delivery of the engines by the J. H. Hansen Company on the 7th of June, 1917, as defined by their contract." The words "and delivery" in the clause last quoted may have been intended for "nondelivery," in which event provision would

have been made for the contingency of delay in the delivery of the engines; but the parties themselves did not so declare, and we do not think the court has the power to make, by construction, that contract for them.

The points made on behalf of the cross-plaintiff in error have been carefully considered, and we are of the opinion that they are without substantial merit.

The judgment is affirmed.